**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA
FARGO DIVISION**

| | |
|---|---|
| In re: | ) |
| | )   Case No. 25-30429 |
| MonDak Portables, LLC, | ) |
| | ) |
| Debtor. | )   Chapter 11 |
| | ) |
| | ) |
| | ) |

**<u>CHAPTER 11 PLAN OF REORGANIZATION DATED APRIL 6, 2026</u>**

Submitted by Plan Proponents
(As set forth on Page 2 herein)

## PLAN PROPONENTS

**Debtor and Debtor in Possession, <u>By
and through counsel:</u>**

| | |
|---|---|
| THE DAKOTA BANKRUPTCY FIRM | CAROTHERS & HAUSWIRTH LLP |
| Maurice B. VerStandig | Patrick W. Carothers (PA ID No. 85721) |
| Christianna A. Cathcart | Gregory W. Hauswirth (PA ID No. 307482) |
| 1630 1st Avenue N | Foster Plaza 10 |
| Suite B PMB 24 | 680 Andersen Drive, Suite 230 |
| Fargo, North Dakota 58102-4246 | Pittsburgh, PA 15220 |
| Phone: (701) 394-3215 | Telephone: 412-910-7500 |
| mac@dakotabankruptcy.com | Facsimile: 412-910-7510 |
| christianna@dakotabankruptcy.com | pcarothers@ch-legal.com |
| | ghauswirth@ch-legal.com |

**<u>Equity Holders in Reorganized Debtor and Key Employees:</u>**

<u>Equity Holders</u>:

Katherine Zent
Barbara Rogers
Linda Byerly

<u>Key Employees</u>:

Katherine Zent
Barbara Rogers
Rick Rogers

---

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026

**CHAPTER 11 PLAN OF REORGANIZATION** ......................................................................6

**Section 1 DEFINITIONS AND INTERPRETATION** ..................................................6

1.1 DEFINITIONS ................................................................................................................6

1.2 INTERPRETATION AND APPLICATION OF DEFINITIONS AND RULES OF CONSTRUCTION ..............12

**Section 2 PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSECLAIMS AND ALLOWED PRIORITY TAX CLAIMS** ...........................................................................13

**Section 3 CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ............................14

**Section 4 PROVISIONS FOR TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS** ............................................................................................................................14

4.1 CLASS 1 – PRIORITY NON-TAX CLAIMS ....................................................................14

4.2 CLASS 2 – NAC SECURED CLAIM ...............................................................................14

4.3 CLASS 3 – USSBA SECURED CLAIM ...........................................................................15

4.4 CLASS 4 –KAPITUS SECURED CLAIM .........................................................................15

4.5 CLASS 5 – IRS SECURED CLAIM .................................................................................15

4.6 CLASS 6 – CAPFIRST SECURED CLAIM .......................................................................16

4.7 CLASS 7 – FFBT SECURED CLAIM ..............................................................................16

4.8 CLASS 8 – HYG SECURED CLAIM ...............................................................................16

4.9 CLASS 9 – ASCENTIUM SECURED CLAIM ...................................................................16

4.10 CLASS 10 – GENERAL UNSECURED CLAIMS .............................................................17

4.11 CLASS 11 – EQUITY INTERESTS ................................................................................17

**Section 5 IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN** .................................................................17

5.1 HOLDERS OF CLAIMS ENTITLED TO VOTE ..................................................................17

5.2 HOLDERS OF CLAIMS AND EQUITY INTERESTS NOT ENTITLED TO VOTE ...................18

5.3 NON-CONSENSUAL CONFIRMATION ...........................................................................18

**Section 6 MEANS OF IMPLEMENTATION** ........................................................................18

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026

6.1 CONTINUATION OF OPERATIONS AND NEW VALUE CONTRIBUTION ...........................................18

6.2 PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................................18

6.3 REPRESENTATIVE OF DEBTOR'S BANKRUPTCY ESTATE ................................................................18

6.4 POST-EFFECTIVE DATE PLAN IMPLEMENTATION........................................................................19

6.5 SETTLEMENT OF CLAIMS AND CONTROVERSIES..........................................................................19

**Section 7 PROVISIONS GOVERNING DISTRIBUTIONS** ....................................................19

7.1 DATE OF DISTRIBUTIONS .........................................................................................................19

7.2 DELIVERY OF DISTRIBUTIONS ..................................................................................................20

7.3 DE MINIMIS PAYMENTS ...........................................................................................................20

7.4 SETOFFS...................................................................................................................................20

7.5 DISTRIBUTIONS AFTER EFFECTIVE DATE ..................................................................................20

**Section 8 PROCEDURES FOR TREATING DISPUTED CLAIMS**.......................................20

8.1 DISPUTED CLAIMS PROCESS ....................................................................................................20

8.2 TREATMENT OF DISPUTED CLAIMS ..........................................................................................21

8.3 DISPUTED CLAIMS RESERVE ACCOUNT ....................................................................................21

**Section 9 CONDITIONS PRECEDENT TO CONFIRMATION DATE AND EFFECTIVE
DATE** ....................................................................................................................................22

9.1 CONDITIONS TO EFFECTIVE DATE ...........................................................................................22

9.2 WAIVER OF CONDITIONS .........................................................................................................22

9.3 EFFECT OF NON-OCCURRENCE OF THE EFFECTIVE DATE..........................................................22

**Section 10 EFFECT OF CONFIRMATION** ...........................................................................23

10.1 VESTING OF ASSETS................................................................................................................23

10.2 BINDING EFFECT.....................................................................................................................23

10.3 DISCHARGE OF DEBTOR...........................................................................................................23

10.4 INJUNCTIONS ..........................................................................................................................23

10.5 PRESERVATION OF CAUSES OF ACTIONS AND RIGHTS............................................................24

10.6 RELEASES ........................................................................................................................25

10.7 SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF REORGANIZED DEBTOR ............................25

**Section 11 RETENTION OF JURISDICTION**........................................................................25

**Section 12 MISCELLANEOUS PROVISIONS**.......................................................................27

12.1 MODIFICATION OF PLAN ...................................................................................................27

12.3 ADMINISTRATIVE EXPENSES INCURRED AFTER THE CONFIRMATION DATE ...........................27

12.4 STATUTORY FEES AND REPORTING REQUIREMENTS ...............................................................27

12.5 EXCULPATION .................................................................................................................27

12.6 UNCLAIMED PROPERTY ....................................................................................................28

12.7 SEVERABILITY OF PLAN PROVISIONS ....................................................................................28

12.8 NOTICE OF DEFAULT ........................................................................................................28

12.9 NOTICES .........................................................................................................................29

12.10 EXEMPTION FROM TRANSFER TAXES ..................................................................................29

12.11 GOVERNING LAW ...........................................................................................................29

12.12 BINDING EFFECT ............................................................................................................29

**EXHIBITS:**

☐ <u>Exhibit 1</u> – Equity Holders' Promissory Note

## CHAPTER 11 PLAN OF REORGANIZATION

## DATED FEBRUARY 26, 2026

Plan Proponents hereby propose the following Plan in accordance with Section 1121(a) of the Bankruptcy Code:

Section 1        DEFINITIONS AND INTERPRETATION

1.1      <u>Definitions.</u>

1)  *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Case allowed under Sections 503(b) and 507(a) of the Bankruptcy Code, including, without limitation, (i) any actual and necessary costs and expenses of preserving Debtor's estate, (ii) any actual and necessary costs and expenses of operating Debtor's business in the ordinary course, (iii) any indebtedness or obligations incurred or assumed by Debtor in Possession during the Chapter 11 Case in the ordinary course of business, (iv) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under Section 330 or 503 of the Bankruptcy Code, (v) any fees or charges assessed against Debtor's estate under Section 1930, Title 28, United States Code, and (vi) any post-petition bond obligations which have come due prior to the Effective Date and arise in the ordinary course of Debtor's business.

2)  *Allowed* means, with reference to any Claim, except as otherwise provided in this Plan, (i) any Claim that has been listed by Debtor in the Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not Disputed or contingent and for which no contrary Proof of Claim has been filed, as to which no objection to allowance has been interposed in accordance with this Plan or the Bankruptcy Code or Rules; (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; or (iii) any Claim expressly allowed by a Final Oder or hereunder.

3)  *Allowed Claim* means a Claim to the extent such Claim is either (i) scheduled by Debtor in its books and records in a liquidated amount and not listed as contingent, unliquidated or Disputed; (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with this Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder; or (iii) has otherwise been allowed by a Final Order or pursuant to this Plan.  An Allowed

Claim shall be net of any setoff amount of any Claim that may have been asserted by Debtor against the Holder of such Claim, which shall be deemed to have been setoff in accordance with the provisions of this Plan.

4) *Ascentium* means Regions Bank d/b/a Ascentium Capital

5) *Ascentium Collateral* means those certain 68 gallon tanks and side panels for handicap toilets financed through Agreement No. 2755650  23-001283268-3 6) *Ascentium Secured Claim* means $15,000.

7) *Bankruptcy Code* means Title 11, United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

8) *Bankruptcy Court* means the United States Bankruptcy Court for the District of North Dakota, having jurisdiction over the Chapter 11 Case and, to the extent the reference under Section 157, Title 28, United States Code, is withdrawn, the United States District Court for the District of North Dakota.

9) *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended from time to time, applicable to the Chapter 11 Case and any local rules of the Bankruptcy Court.

10) *Business Day* means any day other than a Saturday, a Sunday, or other day on which banking institutions in Fargo, North Dakota, are required or authorized to close by law or executive order.

11) *Byers* means Byers Enterprises, LLC d/b/a Big John Portable Toilet Rentals.

12) *CapFirst* means CapFirst Equipment Finance, Inc.

13) *CapFirst Collateral* means the assets identified in duly perfected UCC-1 Financing Statements recorded with the North Dakota Secretary of State at Filing No. 22001142628-0 on December 16, 2022, which were surrendered to CapFirst prior to the Petition Date, together with those certain Liens against the Epping Facility and the Fairmont Facility arising from the recording of the CapFirst Judgement in Williams County, North Dakota and in Grant County, Indiana.

14) *CapFirst Judgement* means that certain judgment entered against MonDak in favor of CapFirst in the District Court of the Northwest Judicial District, for Willaims County and the State of North Dakota at Case No. 53-2024-CV-01670 on October 17, 2024.

15) *CapFirst Secured Claim* means $119,005.40.

16) *Cash* means legal tender of the United States of America.

17) *Chapter 11 Case* means Debtor's bankruptcy case filed with the Bankruptcy Court under Chapter 11 of the Bankruptcy Code at Case No 25-30429 in the United States Bankruptcy Court for the District of North Dakota.

18) *Claim* has the meaning set forth in Section 101(5) of the Bankruptcy Code.

19) *Class* means any group of substantially similar Claims or Equity Interests classified in Section 3 of this Plan and pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code.

20) *Collateral* means any property or interest in property of Debtor's bankruptcy estate that is subject to a Lien to secure the payment or performance of a Claim, which Lien is not invalid under the Bankruptcy Code or applicable state law.

21) *Confirmation Date* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

22) *Confirmation Hearing* means the hearing held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

23) *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

24) *Debtor* means MonDak Portables, LLC, a North Dakota limited liability company.

25) *Debtor in Possession* means Debtor in its capacity as Debtor in possession in the Chapter 11 Case under Sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

26) *Disallowed*, when used with respect to a Claim, means a Claim, or any portion thereof, that (i) is scheduled at zero or as contingent, unliquidated, or Disputed and as to which a bar date has been established but no Proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; (ii) is not scheduled and as to which a bar date has been established but no Proof of Claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law; or (iii) has been disallowed by a Final Order.

27) *Disclosure Statement* means the disclosure document relating to this Plan, including, without limitation, all amendments, exhibits, and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

28) *Disputed* means, with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not an Allowed Claim and has not yet been determined to be a

Disallowed Claim by Final Order.  For the avoidance of doubt, any Claim, in whole or in part, that is subject to a pending objection on the Effective Date to the Allowance

of such Claim shall be considered a Disputed Claim in its entirety until that objection has been resolved by Final Order of the Bankruptcy Court.

29) *Disputed Claims Reserve Account* means the segregated account(s) established by Reorganized Debtor for the payment of Disputed Claims that become Allowed Claims after the Effective Date, and which shall hold cash for the benefit of the Holder(s) of Disputed Claims.

30) *Distribution* means Cash distributed under this Plan to holders of Allowed Claims.

31) *Effective Date* means the first Business Day on which all the conditions precedent to the Effective Date specified in Section 9 of this Plan shall have been satisfied or waived.

32) *Ending Cash Balance* means the ending positive cash balance available to Reorganized Debtor in its operating accounts at the end of a Business Day.

33) Epping Facility means Debtor's real property and improvements thereon located at 13008 60th St. NW, Epping, North Dakota.

34) *Equity Holders' Promissory Note* means that Promissory Note provided by Katherine, Zent, Barbara Rogers and Linda Byerly for the New Value Contribution, substantially in the form set forth in Exhibit 1 of this Plan.

35) *Equity Interest* has the meaning set forth in Section 101(16) of the Bankruptcy Code and shall include any membership interest or other ownership interest in Debtor, whether certificated or uncertificated.

36) *Fairmont Facility* means real property and improvements thereon located at  625 East Sixth Street, Fairmount, Indiana.

37) *FFBT* means First Farmer's Bank & Trust.

38) *FFBT Judgement* means that certain judgment entered against MonDak in favor of FFBT n the Circuit Court for Grant County, Indiana at Case No. 27CO1-2406-MF000053 on August 16, 2024.

39) *Final Order* means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been stayed, and for which any time to appeal, petition for certiorari, seek mandamus, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or request for mandamus, reargument, or rehearing is pending.

40) *General Unsecured Claim* means a Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim, or a Priority Non-Tax Claim.

41) *Governmental Unit* has the meaning set forth in Section 101(27) of the Bankruptcy Code.

42) *Holder* means the Person to whom the obligation is owed.

43) *HYG* means HYG Financial Services, Inc.

44) *HYG Secured Claim* means $16,312.61.

45) *HYG Collateral* means a certain 2000 Genie Lift, 2012 Genie Lift, 2015 Genie Lift, and 2018 Genie Lift, as evidenced through a duly perfected UCC-1 Financing Statement recorded with the North Dakota Secretary of State at Filing No. 22001091914-1 on August 8, 2022.  A true and correct copy of such filing is available upon request to ghauswirth@ch-legal.com.

46) *Impair or Impaired* has the meaning set forth in Section 1124 of the Bankruptcy Code.

47) *Insider* has the meaning set forth in Section 101 of the Bankruptcy Code.

48) *IRS* means the United States Internal Revenue Service.

49) *IRS Collateral* means all of the assets of MonDak, as set forth in the Notice of Federal Tax Lien filed by the IRS in October 2022, and as further evidenced by the IRS by the IRS's recording of a UCC-1 Financing Statement with the North Dakota Secretary of State on October 14, 2022 at Filing Nos. 22-001121016-2 and 22-001121032-.  A true and correct copy of such filings is available upon request to ghauswirth@chlegal.com.

50) *IRS Secured Claim* means $51,258.08.

51) *Kapitus* means Kapitus Funding, LLC.

52) *Kapitus Collateral* means the assets identified in a duly perfected UCC-1 Financing Statement recorded with the North Dakota Secretary of State at Filing No. 22001077200-5 on June 28, 2022.  A true and correct copy of such filing is available upon request to ghauswirth@ch-legal.com.

53) *Kapitus Secured Claim* means the outstanding balance owed by MonDak to Kapitus that is secured by a Lien against the Kapitus Collateral.

54) *Key Employees* means Katherine Zent, Barbara Rogers, and Rick Rogers.

55) *Lien* has the meaning set forth in Section 101(37) of the Bankruptcy Code.

56) *MonDak* means Debtor, MonDak Portables, LLC, a North Dakota limited liability company.

57) *New Value Contribution* means Katherine Zent, Barbara Rogers and Linda Byerly causing the Equity Holders' Promissory Note to be contributed under this Plan to Reorganized Debtor as provided in Section 6.1 of this Plan.

58) *Person* has the meaning set forth in Section 101(41) of the Bankruptcy Code.

59) *Petition Date* means September 29, 2025, the date on which Debtor commenced the Chapter 11 Case.

60) *Plan* means this Chapter 11 Plan of Reorganization dated February 26, 2026, submitted by Plan Proponents, including, without limitation, any and all amendments, exhibits and schedules thereto, as the same may be amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms of this Plan.

61) *Plan Proponents* shall mean Debtor, Katherine Zent, Barbara Rogers, and Linda Byerly.

62) *Prime Rate* means for any day a per annum rate of interest equal to the "prime rate," as published in the "Money Rates" column of *The Wall Street Journal*, from time to time, or if for any reason such rate is no longer available, the rate reasonably established by the note Holder as its prime rate.  Interest shall be computed on the basis of the actual number of days elapsed over a 365-day year, including the first and the last day.

63) *Priority Non-Tax Claim* means any Claim that is entitled to priority in accordance with Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

64) *Priority Tax Claim* means any Claim of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

65) *Pro-Rata* means, with reference to any Distribution on account of an Allowed Claim, a Distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in that Class or Classes.

66) *Proof of Claim* means a written statement setting forth a creditor's claim in accordance with Federal Rule of Bankruptcy Procedure 3001.

67) *Reorganized Debtor* means MonDak Portables, LLC, as reorganized immediately following the Effective Date of this Plan, with all assets of Debtor fully vesting in MonDak Portables pursuant to Section 1129 of the Bankruptcy Code.

68) *Secured Claim* means any Claim that is (a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of (i) the value, net of any senior Lien, of Debtor's interest in the Collateral or the amount subject to setoff, as the case may be; or (ii) as determined by a Final Order in accordance with Section 506 of the Bankruptcy Code.

69) *Secured Creditors* shall mean any Holder of a Secured Claim, who Debtor asserts are the creditors set forth in Class Nos. 2 through 10 of this Plan.

70) *Schedules* mean the schedules of assets and liabilities and the statements of financial affairs filed by Debtor under Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the official bankruptcy forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time through the Effective Date.

71) *NAC* means North Avenue Capital, LLC.

72) *NAC Secured Claim* means **$3,906,891.66**.

73) *NAC Collateral* means the specific assets of the Debtor outlined in Section 2.1 of the Disclosure Statement, as of April 6, 2026.

74) *USSBA* means United States Small Business Administration.

75) *USSBA Collateral* means the specific assets of the Debtor outlined in Section 2.1 of the Disclosure Statement, as of April 6, 2026.

76) *USSBA Secured Claim* means **$1,700,830.22**.

1.2　Interpretation and Application of Definitions and Rules of Construction.

Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, or schedule or exhibit to, this Plan, as the same may be amended from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

Section 2       PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

All Claims of professionals for compensation and reimbursement of expenses under Section 327, 328, 330, or 331 of the Bankruptcy Code shall be paid in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court for paying interim and final compensation and expenses. Administrative Expense Claims incurred in the ordinary course of business and on ordinary business terms shall be paid by Reorganized Debtor in accordance with ordinary business terms for payment of such Claims. Administrative Expense Claims of the United States Trustee for fees pursuant to Section 1930(a)(b), Title 28 shall be paid by Reorganized Debtor in accordance with the applicable schedule for payment of such fees.

Administrative Expense Claims against Debtor consist of claims for legal fees and expenses of Carothers & Hauswirth LLP ("C&H"), and the fees and expenses of Debtor's financial advisor, Ascend Business Services, LLC ("Ascend"). C&H and Ascend have incurred Administrative Expense Claims in this bankruptcy proceeding for legal and advisory services rendered and expenses incurred in their representation of Debtor and its estate during the administration of this bankruptcy proceeding.  The allowance of such fees remains subject to approval of this Court.

Each Holder of an Administrative Expense Claim shall be paid one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, except to the extent that such Holder agrees to different treatment. Notwithstanding the immediately preceding sentence: (a) Administrative Expense Claims incurred in the ordinary course of business and on ordinary business terms shall be paid by Reorganized Debtor in accordance with ordinary business terms for payment of such Claims; and (b) Administrative Expense Claims of the United States Trustee for fees pursuant to Section 1930(a)(b), Title 28, shall be paid by Reorganized Debtor in accordance with the applicable schedule for payment of such fees until a final decree is entered and the case is closed.

Notwithstanding the foregoing, the Holder of an Administrative Expense Claim may receive such other treatment as may be agreed upon by the Holder, Debtor and/or Reorganized Debtor.

Priority Tax Claims against the Debtor include tax claims entitled to priority in payment, specifically including IRS claims.

Following the Effective Date, each Holder of an Allowed Priority Tax Claim may receive deferred monthly payments over a period not exceeding five (5) years from the order for relief entered in this bankruptcy proceeding.

Based upon the books and records of Debtor and Proofs of Claim that have now been filed in the case, Debtor asserts that the aggregate amount of Priority Tax Claims consists of $1,280.10 owed to the IRS.

Section 3      CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, the following designates the Classes of Claims and Equity Interests under this Plan.  A Claim or Equity Interest is in a particular Class for the purpose of voting on, and receiving Distributions pursuant to this Plan, only to the extent that such Claim is an Allowed Claim or Allowed Equity Interest in that Class or such Claim or Equity Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  Claims against Debtor, and Equity Interests in Debtor, are classified for all purposes, including voting, confirmation, and Distribution, as follows:

- Class 1 – Priority Non-Tax Claims
- Class 2 – NAC Secured Claim
- Class 3 – USSBA Secured Claim
- Class 4 – Kapitus Secured Claim
- Class 5 – IRS Secured Claim
- Class 6 – CapFirst Secured Claim
- Class 7 – FFBT Secured Claim
- Class 8 – HYG Secured Claim
- Class 9 – Ascentium Secured Claim
- Class 10– General Unsecured Claims
- Class 11 – Equity Interests

Section 4      PROVISIONS FOR TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS

4.1      Class 1 – Priority Non-Tax Claims

Class 1 consists of the Allowed Priority Non-Tax Claims against Debtor.  This Plan provides that on the Effective Date, except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of their respective Allowed Priority Non-Tax Claim, or (ii) such other treatment, as determined by the Bankruptcy Code, required to render such Claim not Impaired.  Allowed Claims in Class 1 are not Impaired and are deemed to have accepted this Plan.

4.2      Class 2 – NAC Secured Claim

The NAC Secured Claim shall restructured and paid, net of any payments made to NAC following the Petition Date, through the following means:

i.      The NAC Secured Claim shall be deemed an Allowed Secured Claim equal to the $3,906,891.66 asserted in Proof of Claim No. 4-1 and 5-1; and

ii.  MonDak shall pay the NAC Secured Claim through monthly installments amortized over 240 months at the Prime Rate plus two (2.0) percent per annum (currently 8.75% in total), with such interest commencing on the Effective Date. Notwithstanding the foregoing amortization schedule, the entire principal balance, together with accrued but unpaid interest, shall be due in and payable in full eighty-four months following the Effective Date.  the As of the Effective Date, the initial monthly installments Reorganized Debtor will remit to NAC on the NAC Secured Claim will be $34,525.62.

Payments on the NAC Secured Claim shall commence on the fifteenth day of the month following the Effective Date and shall be payable on the fifteenth day of each subsequent month thereafter.

As of the Effective Date, the NAC Secured Claim will be secured by (and exclusively by) Liens in the NAC Collateral and in all after-acquired assets of MonDak and Reorganized Debtor.  NAC shall be permitted to take all steps reasonably necessary to protect its Liens, including filing a UCC-1 Financing Statement.  Reorganized Debtor will execute any document or consent to any filing deemed necessary by NAC to protect its interests.

Class 2 is Impaired under this Plan and each Holder of a Class 2 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.3    Class 3 – USSBA Secured Claim

The entirety of the USSBA Secured Claim shall be reclassified as a General Unsecured Claim in accordance with Section 506 of the Bankruptcy Code and subject to the procedures for treating Disputed Claims set forth in Section 8 of this Plan.

Class 3 is Impaired under this Plan and each Holder of a Class 3 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.4    Class 4 –Kapitus Secured Claim

The entirety of the Kapitus Secured Claim shall be reclassified as a General Unsecured Claim in accordance with Section 506 of the Bankruptcy Code and subject to the procedures for treating Disputed Claims set forth in Section 8 of this Plan.

Class 4 is Impaired under this Plan and each Holder of a Class 4 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.5    Class 5 – IRS Secured Claim

The entirety of the IRS Secured Claim shall be reclassified as a General Unsecured Claim in accordance with Section 506 of the Bankruptcy Code and subject to the procedures for treating Disputed Claims set forth in Section 8 of this Plan.

Class 5 is Impaired under this Plan and each Holder of a Class 5 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.6      <u>Class 6 – CapFirst Secured Claim</u>

The entirety of the CapFirst Secured Claim shall be reclassified as a General Unsecured Claim in accordance with Section 506 of the Bankruptcy Code and subject to the procedures for treating Disputed Claims set forth in Section 8 of this Plan.

Class 6 is Impaired under this Plan and each Holder of a Class 6 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.7      <u>Class 7 – FFBT Secured Claim</u>

The entirety of the FFBT Secured Claim shall be reclassified as a General Unsecured Claim in accordance with Section 506 of the Bankruptcy Code and subject to the procedures for treating Disputed Claims set forth in Section 8 of this Plan.

Class 7 is Impaired under this Plan and each Holder of a Class 7 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.8      <u>Class 8 – HYG Secured Claim</u>

The HYG Secured Claim shall restructured and paid through the following means:

Monthly installments amortized over 24 months at the Prime Rate plus two percent per annum (currently 8.75% in total), with such interest commencing on the Effective Date.  As of the Effective Date, the initial monthly installments Reorganized Debtor will remit to HYG on the HYG Secured Claim will be $743.37.

Payments on the HYG Secured Claim shall commence on the fifteenth day of the month following the Effective Date and shall be payable on the fifteenth day of each subsequent month thereafter.

Following the Effective Date, HYG will retain its Lien and security interest in the HYG Collateral and said Lien shall be deemed to have priority over all other Liens in the HYG Collateral. HYG shall be permitted to take all steps reasonably necessary to protect its Lien in the HYG Collateral. Reorganized Debtor will execute any document or consent to any filing deemed necessary by HYG to protect its interests.

Class 8 is Impaired under this Plan and each Holder of a Class 9 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

4.9      <u>Class 9 – Ascentium Secured Claim</u>

The Ascentium Secured Claim shall restructured and paid through the following means:

i.      The Ascentium Secured Claim shall be deemed to be equal to the $15,000 asserted in Claim No. 7-1; ; and

    ii.     Monthly installments amortized over 24 months at the Prime Rate plus two percent per annum (currently 8.75% in total), with such interest commencing on the Effective Date. As of the Effective Date, the initial monthly installments Reorganized Debtor will remit to Ascentium on the Ascentium Secured Claim will be $683.55.

Payments on the NAC Secured Claim shall commence on the fifteenth day of the month following the Effective Date and shall be payable on the fifteenth day of each subsequent month thereafter.

As of the Effective Date, the NAC Secured Claim will be secured by (and exclusively by) Liens in the NAC Collateral and in all after-acquired assets of MonDak and Reorganized Debtor.  NAC shall be permitted to take all steps reasonably necessary to protect its Liens, including filing a UCC-1 Financing Statement.  Reorganized Debtor will execute any document or consent to any filing deemed necessary by NAC to protect its interests.

    4.10    <u>Class 10 – General Unsecured Claims</u>

Holders of Allowed General Unsecured Claims shall receive a combination of the following under this Plan:

A Pro-Rata share of twelve (12) consecutive quarterly payments of $5,000.00 for total payments of $60,000.00.  Such payments shall commence on the last Business Day of the 3rd full month after the Effective Date occurs and continue thereafter on the last Business Day of each quarter for eleven (11) consecutive quarters (i.e. if the Effective Date is May 10, 2026, the first payment will be due on the last Business Day of August 2026);

Class 10 is Impaired under this Plan and each Holder of a Class 10 Claim that is not Disputed is entitled to vote to accept or reject the Plan.

    4.11    <u>Class 11 – Equity Interests</u>

In exchange for the New Value Contribution, the Equity Interests of Katherine Zent, Barbara Rogers and Linda Byerly as Reorganized Debtor shall remain equal to the Equity Interests in MonDak held by Katherine Zent, Barbara Rogers and Linda Byerly prior to the Petition Date.

Allowed Equity Interests in Class 11 are not Impaired and are deemed to have accepted this Plan.

Section 5       IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN

    5.1    <u>Holders of Claims Entitled to Vote.</u>

Under this Plan, it is anticipated that Holders of the Claims in Class Nos. 2-11 will receive a Distribution in an amount less than that amount they are owed or their legal, equitable, and contractual rights are being altered.  Accordingly, Holders of Claims in Class Nos. 2-11, are Impaired and are entitled to vote to accept or reject this Plan.

     5.2       Holders of Claims and Equity Interests Not Entitled to Vote.

The Class 1 Claims (Priority Non-Tax Claims) and Class 11 (Equity Interests) are not Impaired. As a result of this, the Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted this Plan, and Holders of Claims in these Classes are not entitled to vote to accept or reject this Plan.

     5.3       Non-Consensual Confirmation.

In the event Class Nos. 2-10 vote against this Plan and Plan Proponents elect not to withdraw this Plan, Plan Proponents shall request that the Bankruptcy Court confirm this Plan under the cramdown provisions of Section 1129(b) of the Bankruptcy Code, if necessary, on the basis that this Plan is fair and equitable, is proposed in good faith, and does not discriminate unfairly against Class Nos. 2-10.

Section 6       MEANS OF IMPLEMENTATION

     6.1       Continuation of Operations and New Value Contribution.

Following the Effective Date, Reorganized Debtor will operate the business of MonDak.  The Key Employees will remain employees of Reorganized Debtor and will continue to be compensated at the same rate of pay they each received prior to the Petition Date for the duration of the term of this Plan.  Following the Effective Date, Barbara Rogers, Katherine Zent, and Linda Byerly shall cause the New Value Contribution to be made to Reorganized Debtor.

     6.2       Provisions for Executory Contracts and Unexpired Leases.

Debtor does not have any executory contracts or unexpired leases.  To the extent it is asserted that executory contracts or unexpired leases exist, such contracts and leases shall be deemed rejected as of the Petition Date.  Holders of rejected executory contracts or unexpired leases shall have thirty (30) days from the Effective Date to file a Proof of Claim for any damages arising by the rejection.  Failure to file a Proof of Claim for rejection damages within thirty (30) days from the Effective Date shall act as a bar to any late filed Proof of Claim, and Debtor shall not be required to file an objection to the late-filed rejection damages Claim.  Debtor reserve its right to object to any Claims timely filed on account of the rejection of the claimholder's executory contract or unexpired lease in accordance with this Plan.

     6.3       Representative of Debtor's bankruptcy estate.

On and after the Effective Date, Reorganized Debtor shall be appointed representative of Debtor's bankruptcy estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code.  Reorganized Debtor may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein), settle or compromise (or decline to do any of the foregoing) any or all of the causes of action retained pursuant to this Plan.  Except as otherwise ordered by the Bankruptcy Court, Reorganized Debtor shall be vested with authority and standing to prosecute the causes of action

---

retained pursuant to this Plan.  Reorganized Debtor and its attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such causes of action.

6.4     Post-Effective Date Plan Implementation.

On and after the Effective Date, Reorganized Debtor is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan, in the name of and on behalf of Reorganized Debtor, without the need for any approvals, authorization, or consents, except those expressly required pursuant to this Plan.

6.5     Settlement of Claims and Controversies.

Pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for all Distributions under this Plan and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Equity Interest may have with respect to such Claim or Equity Interest or any Distribution under this Plan on account thereof.  If the Confirmation Order is not entered or the Effective Date does not occur, Debtor reserves its rights with respect to all disputes resolved and settled under this Plan.

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of each compromise and settlement embodied in this Plan, and the Bankruptcy Court's finding that all such compromises and settlements are (a) in Debtor's and its bankruptcy estate's best interests and (b) fair, equitable, and within the range of reasonableness.  The provisions of this Plan, including, without limitation, its release, injunction, exculpation, and compromise provisions are mutually dependent.**

Section 7     PROVISIONS GOVERNING DISTRIBUTIONS

7.1     Date of Distributions.

Unless otherwise provided in this Plan (i.e., the Distributions to Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Claims in Class Nos. 2-10 or as otherwise agreed between Reorganized Debtor and the corresponding party, any Distributions and deliveries to be made hereunder, shall be made on the Effective Date or, as soon as practicable thereafter, and shall be deemed made on the Effective Date.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed, shall be deemed to have been completed as of the required date.  If, and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Section 8 herein.

7.2 Delivery of Distributions.

Subject to Bankruptcy Rule 9010, all Distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the books and records of Debtor or its agents, unless the Holder of such Allowed Claim:  (i) notifies Reorganized Debtor in writing of a change of address, or (ii) has filed a Proof of Claim, in which case, to the address listed in such notification or Proof of Claim.  In the event that any Distribution to any Holder of a Claim is returned as undeliverable, Reorganized Debtor shall use reasonable efforts to determine the current address of such Holder.

7.3 De Minimis Payments.

No Distributions or payment will be made on any Allowed Claim unless the amount to be distributed on account of such Allowed Claim is greater than $5.00.

7.4 Setoffs.

Except as otherwise provided in this Plan, the Confirmation Order, or in agreements approved by Final Order, Debtor and/or Reorganized Debtor may, pursuant to applicable law (including Section 553 of the Bankruptcy Code), offset against any Claim, including an Administrative Expense Claim, before any Distribution is made on account of such Claim, any and all of the claims, rights, and causes of action of any nature that Debtor and/or Reorganized Debtor may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of Debtor and/or Reorganized Debtor, nor any provision of this Plan shall constitute a waiver or release by Debtor and/or Reorganized Debtor of any such claims, rights, and causes of action that Debtor and/or Reorganized Debtor may possess against such Holder.  To the extent Debtor and/or Reorganized Debtor fails to set off against a Holder and seek to collect a Claim from such Holder after a Distribution to such creditor pursuant to this Plan, Debtor and/or Reorganized Debtor, if successful in asserting such Claim, shall be entitled to full recovery on the Claim of such party or parties against such Holder.

7.5 Distributions After Effective Date.

Distributions made after the Effective Date to Holders of Disputed Claims that later become Allowed Claims shall be deemed made as of the Effective Date.

Section 8 PROCEDURES FOR TREATING DISPUTED CLAIMS

8.1 Disputed Claims Process.

MonDak and Reorganized Debtor are entitled to, and reserve the right to, object to any and all Claims, including but not limited to, Administrative Expense Claims and Claims that are the subject of Proofs of Claim or requests for payment.  After the Confirmation Date, Reorganized Debtor shall have the exclusive right to make and file objections to such Claims.  Unless otherwise ordered by the Bankruptcy Court, Reorganized Debtor shall file all objections to

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026

Claims, including Administrative Expense Claims, or Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court and serve such objections upon the Holders of such Claims, including the Administrative Expense Claims or Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court and serve such objections upon the Holders of such Claims, including the Administrative Expense Claims or Claims as to which the objections are made as soon as is practicable, but in no event later than (a) ninety (90) days after the Effective Date or (b) such later date as may be approved by the Bankruptcy Court.

       8.2      <u>Treatment of Disputed Claims.</u>

Notwithstanding any other provisions of this Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.

       8.3      <u>Disputed Claims Reserve Account.</u>

       a)      <u>Establishment of Disputed Claims Reserve Account</u>. On the Effective Date, and in conjunction with making all Distributions required to be made on the Effective Date, Reorganized Debtor shall establish the Disputed Claims Reserve Account, which shall be administered by Reorganized Debtor.

       b)      <u>Duties in Connection with Disputed Claims</u>. Reorganized Debtor shall (i) hold and administer the Disputed Claims Reserve Account; (ii) object to, settle or otherwise resolve Disputed Claims; (iii) make Distributions to Holders of Disputed Claims that subsequently become Allowed Claims in accordance with this Plan; and (iv) distribute any remaining assets of the Disputed Claims Reserve Account, after resolving all Disputed Claims, to Reorganized Debtor.

       c)      <u>Transfer of Distributions to Disputed Claim Reserve Account</u>. On and after the Effective Date, any Distributions that would otherwise be made to the Holders of Disputed Claims shall be transferred to the Disputed Claims Reserve Account. Payments shall be made from the Disputed Claims Reserve Account to the Holder of an Allowed Claim, which was previously a Disputed Claim, upon the first Distribution date immediately following the date upon which such Claim became an Allowed Claim.

       d)      <u>Termination of Disputed Claims Reserve Account</u>. The Disputed Claims Reserve Account shall be terminated by Reorganized Debtor when all Disputed Claims related to such account have either become Allowed Claims

or Disallowed Claims and Distributions required herein to be made have been made in accordance with the terms of this Plan.

Section 9      CONDITIONS PRECEDENT TO CONFIRMATION DATE AND EFFECTIVE DATE

9.1      <u>Conditions to Effective Date.</u>

The Effective Date does not occur unless and until:

a.      No material adverse effect on the business, assets, operations, property, condition (financial or otherwise), or prospects of MonDak shall have occurred or be continuing;

b. The Confirmation Order, in form and substance reasonably acceptable to Plan Proponents, shall have been entered by the clerk of the Bankruptcy Court, and such Confirmation Order shall have become a Final Order; and

c. This Plan has not been withdrawn by Plan Proponents.

9.2      <u>Waiver of Conditions.</u>

Plan Proponents may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, by an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of this Plan.

9.3      <u>Effect of Non-Occurrence of the Effective Date.</u>

If the Effective Date does not occur, this Plan shall be null and void and nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against Debtor; (b) prejudice in any manner the rights of Debtor, including any right to seek a further extension of the exclusivity periods under Section 1121(d) of the Bankruptcy Code; (c) constitute an admission, acknowledgement, offer, or undertaking by Debtor.

Section 10        EFFECT OF CONFIRMATION

10.1      Vesting of Assets.

Pursuant to the Bankruptcy Code, including but not limited to Sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, on the Effective Date all assets and property of Debtor or its bankruptcy estate shall vest in Reorganized Debtor free and clear of all Liens, Claims, causes of action, interests and encumbrances, except as provided in this Plan or the Confirmation Order.

10.2 Binding Effect.

Except as otherwise provided in Section 1141(a) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of the Claims against, or Equity Interest in, Reorganized Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan.

10.3      Discharge of Debtor.

Pursuant to Section 1141(d) of the Bankruptcy Code, and except as provided in the Plan or the Confirmation Order, confirmation will: (a) discharge MonDak, its bankruptcy estate and Reorganized Debtor from all Claims, causes of action, interests and/or other debts that arose before the Effective Date, including but not limited to all debts of the kind specified in Section 502 of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the Holder of the Claim based on such debt has accepted the Plan; and (b) all Persons and entities (including all Governmental Units) will be precluded from asserting against Reorganized Debtor or its assets or properties or against a successor of Reorganized Debtor or its assets and properties any other or further  Claims, causes of action, or interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order will act as a discharge of any and all Claims, causes of action, and/or interests against, and all debts and liabilities of, Debtor, Reorganized Debtor and/or Debtor's bankruptcy estate based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against Debtor, Debtor's bankruptcy estate, and Reorganized Debtor at any time obtained to the extent that it relates to a Claim, cause of action, interest and/or debt discharged.

10.4    Injunctions.

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ON AND AFTER THE CONFIRMATION DATE, ALL PERSONS, ENTITIES AND/OR GOVERNMENTAL UNITS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING**

**ANY ACTION, EMPLOYMENT OF PROCESS, OR ACT TO COLLECT, OFFSET, OR RECOVER ANY DEBTS, CLAIMS, AND/OR CAUSES OF ACTION TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED BY THE BANKRUPTCY CODE, INCLUDING, WITHOUT LIMITATION, TO THE EXTENT PROVIDED FOR OR AUTHORIZED BY SECTIONS 524 AND 1141 OF THE BANKRUPTCY CODE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL PERSONS, ENTITIES AND/OR GOVERNMENTAL UNITS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, DEBTS, AND/OR CAUSES OF ACTION AGAINST IN MONDAK OR ITS BANKRUPTCY ESTATE, WITH RESPECT TO ANY SUCH CLAIMS, DEBTS, AND/OR CAUSES OF ACTION, PERMANENTLY ENJOINED FROM AND AFTER THE CONFIRMATION DATE FROM: (I) COMMENCING, CONDUCTING OR**
**CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING MONDAK, ITS BANKRUPTCY ESTATE AND/OR REORGANIZED DEBTOR OR ANY OF ITS ASSETS AND/OR PROPERTY; (II) ENFORCING, LEVYING, ATTACHING, COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST MONDAK, ITS BANKRUPTCY ESTATE AND/OR THE REORGANIZED DEBTOR, AND ANY OF ITS ASSETS AND/OR PROPERTY; (III) CREATING, PERFECTING, OR OTHERWISE ENFORCING IN ANY MANNER, ANY ENCUMBRANCE OF ANY KIND AGAINST MONDAK, ITS BANKRUPTCY ESTATE AND/OR THE REORGANIZED DEBTOR, AND ANY OF ITS ASSETS AND/OR PROPERTY; (IV) EXERCISING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE MONDAK, ITS BANKRUPTCY ESTATE AND/OR REORGANIZED DEBTOR, AND ANY OF ITS ASSETS AND/OR PROPERTY; AND (V) ACTING OR PROCEEDING IN ANY MANNER THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN. NOTHING IN THIS SECTION SHOULD BE INTERPRETED AS AN INJUNCTION AGAINST HOLDERS OF ALLOWED CLAIMS FROM ENFORCING THE TERMS AND CONDITIONS AND OBLIGATIONS UNDER THE PLAN, OR THE ENFORCEMENT OF ANY OTHER RIGHTS IN THE EVENT OF A BREACH OF MONDAK, ITS BANKRUPTCY ESTATE, REORGANIZED DEBTOR'S AND/OR PLAN PROPONENTS' OBLIGATIONS UNDER THE PLAN, OR TO AFFECT ANY RIGHTS AND OBLIGATIONS OF REORGANIZED DEBTOR OR PLAN PROPONENTS UNDER THE PLAN.**

      10.5   <u>Preservation of Causes of Actions and Rights.</u>

All causes of action, rights of setoff, and other legal and equitable defenses of Debtor or its bankruptcy estate are preserved unless expressly released, waived, or relinquished under this Plan or the Confirmation Order, and shall vest in Reorganized Debtor upon the Effective Date of this Plan. No Person may rely on the absence of a specific reference in this Plan to any cause of action against them as an indication that a cause of action will not be pursued against them.

**Further, unless expressly released by this Plan or by an order of the Bankruptcy Court, any and all such Claims and causes of action against third parties are specifically reserved, including but not limited to any such Claims or causes of action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, breach of contract, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of Collateral, wrongful retention of Collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust  laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship including bailment, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

        10.6   <u>Releases.</u>

As of the Effective Date, except as provided in this Plan, or in the Order Confirming this Plan, Debtor, NAC, their officers, their counsel, and their retained professionals shall be fully and finally released and discharged of any liability or obligation from any Claim whatsoever arising during this case, with the exception of fraud, gross negligence, and willful misconduct, through the Effective Date whether or not a Claim has been filed, or is deemed filed, or whether such Claim is Allowed or the Holder of such Claim has accepted this Plan. For the avoidance of doubt, this Plan does not seek to release any guaranties extended by Katherine Zent or Barbara Rogers in their individual capacity to a creditor of MonDak.

        10.7   <u>Sale of Substantially All of the Assets of Reorganized Debtor.</u>

Notwithstanding any provisions of the Disclosure Statement and this Plan, Reorganized Debtor shall not seek to sell, and shall not in any event sell, substantially all of its assets at any time prior to such time that it pays in full all obligations due under this Plan, including the NAC Secured Claim, without prior express written consent of NAC.

Section 11      RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine the allowance of Claims resulting therefrom.

(b)     To determine any and all adversary proceedings, applications, and contested matters.

(c)     To ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein.

(d)     To hear and determine any timely objections to Claims, including, without limitation, any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part.

(e)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated.

(f)     To issue such orders in aid of execution of this Plan, to the extent authorized by Section 1142 of the Bankruptcy Code.

(g)     To consider any amendments to or modifications of this Plan, or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

(h)     To hear and determine all applications under Sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

(j)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code.

(k)     To hear any other matter not inconsistent with the Bankruptcy Code.

(l)     To hear and determine all disputes involving the existence, scope, and nature of the discharges granted under this Plan.

(m)     To issue injunctions and affect any other actions that may be necessary or desirable to restrain interference by any entity with the consummation or implementation of this Plan.

(n)     To recover all assets of Debtor and property of Debtor's bankruptcy estate, wherever located.

(o)      To enter a final decree closing the Chapter 11 Case.

Section 12      MISCELLANEOUS PROVISIONS

12.1  Modification of Plan.

Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to modify, alter, amend, revoke or withdraw this Plan prior to the entry of the Confirmation Order; and after the entry of the Confirmation Order, Reorganized Debtor may, together with Plan Proponents and upon order of the Bankruptcy Court, amend or modify this Plan in accordance with Section 1127(b) of the Bankruptcy Code or remedy any defect of omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

12.3      Administrative Expenses Incurred After the Confirmation Date.

Administrative Expenses incurred by Debtor or Reorganized Debtor after the Confirmation Date, including (without limitation) Claims for professionals' fees and expenses, may be paid by Reorganized Debtor without the necessity of an application, and in the ordinary course of business (but in accordance with this Plan) on or after the Effective Date.

12.4      Statutory Fees and Reporting Requirements.

All fees payable in this Chapter 11 Case under 28 U.S.C. § 1930, if and to the extent due as provided in this Plan, or as otherwise determined by the Bankruptcy Court, will, if not previously paid, be paid by Reorganized Debtor in full in Cash on the Effective Date and will continue to be paid by Reorganized Debtor as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing these Chapter 11 Case.

Reorganized Debtor shall also file and serve on the United States Trustee quarterly post confirmation reports no later than twenty (20) days after the end of each calendar quarter that ends after the Effective Date, until such time as an order is entered by the Bankruptcy Court closing these Chapter 11 Case.

12.5  Exculpation.

Debtor, Reorganized Debtor, Plan Proponents, and Holders of Equity Interests and their respective members, partners, officers, directors, employees and agents (including any attorneys and other professionals retained by such Persons) shall have no liability to any Person for any act or omission in connection with, or arising out of; (a) the Disclosure Statement; (b) this Plan; (c) the solicitation of votes for, and pursuit of confirmation of, this Plan; (d) the formulation, preparation, implementation or consummation of this Plan; (e) the administration of this Plan or the property to be distributed under this Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan; or (f) any other act taken or omitted to be taken in connection with the Chapter 11 Case, except for willful misconduct or gross negligence as determined by a Final Order after exhaustion of all rights of

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026

appeal, reconsideration, or rehearing and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan and Chapter 11 Case.

12.6    Unclaimed Property.

For one (1) year after the Effective Date, Reorganized Debtor shall hold all unclaimed property for the benefit of the Holders of Allowed Claims entitled thereto under this Plan.  At the end of one (1) year after the Effective Date, the Holders of Allowed Claims theretofore entitled to unclaimed property held pursuant to this Section 12.6 shall be deemed to have forfeited such property, whereupon all right, title, and interest in and to such property shall immediately and irrevocably revest in Reorganized Debtor.  Such Holder shall cease to be entitled thereto and any such unclaimed property that is Cash shall be property of Reorganized Debtor.

12.7    Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

12.8    Notice of Default.

Any notice of default given under this Plan shall: (i) conspicuously state that it is a notice of default; (ii) describe with particularity the nature of the default including a reference to the specific provision(s) of this Plan as to which a default has occurred; (iii) describe any action required to cure the default including the exact amount of any payment required to cure such default; and (iv) be given to Reorganized Debtor in accordance with Section 12.9 of this Plan.  In the event a notice of default is properly given, prior to the non-defaulting party petitioning the Bankruptcy Court in connection with the default, Reorganized Debtor shall have:  (a) twenty (20) days to cure such default if such default is a monetary default; or (b) thirty (30) days to cure the default if such default is in the nature of a non-monetary default (except that such thirty (30) day period shall be automatically extended for such additional period of time as is reasonably necessary to cure such default, if such default cannot be cured within such period, provided Reorganized Debtor commences the process of curing the same within said thirty (30) day period and diligently pursues such cure).

12.9  Notices.

For any notice, request, or demand to or upon Reorganized Debtor to be effective, it shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Reorganized Debtor:

Attn: Babara Rogers
MonDak Portables, LLC
13008 60th St NW Epping,
ND 58843
mondakportables@yahoo.com

12.10 Exemption from Transfer Taxes.

Pursuant to Section 1146(a) of the Bankruptcy Code: (a) the issuance, distribution, transfer, and exchange of assets or property of Debtor's bankruptcy estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

12.11 Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable or to the extent an exhibit hereto provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of North Dakota without giving effect to the principles of conflict of laws thereof.

12.12 Binding Effect.

This Plan shall be binding upon and inure to the benefit of Debtor, the Holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, Reorganized Debtor.


Dated: April 6, 2026                                    Respectfully submitted,

                                                        /s/ Gregory W. Hauswirth

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026

29

Maurice B. VerStandig, Esq. Christianna A. Cathcart
The Dakota Bankruptcy Firm
1630 1st Avenue N Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
christianna@dakotabankruptcy.com

and

CAROTHERS & HAUSWIRTH LLP
Patrick W. Carothers (PA ID No. 85721)
Gregory W. Hauswirth (PA ID No. 307482)
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA  15220
Telephone:  412-414-6996
Facsimile:   412-910-7510
pcarothers@ch-legal.com
ghauswirth@ch-legal.com

*Attorneys for Debtor,*
*MonDak Portables, LLC*

CHAPTER 11 PLAN OF REORGANIZATION
DATED APRIL 6, 2026